[Civ. No. 623. Fourth Appellate District.—January 6, 1932.]

J. P. RASMUSSEN, Appellant, v. P. T. SULLIVAN et al.,
Respondents.

D. A. Knapp for Appellant.

Pollock & Mitchell for Respondents.

MARKS, J.—Appellant brought this action in the court below to eject respondents from several mining claims which we will hereafter refer to as the Anaconda Group and which are located near Twenty-nine Palms in San Bernardino County, California. Findings of the trial court were made against the right of possession of appellant and judgment was entered for respondents, from which this appeal was taken.

The Anaconda Gold Mining Company was a California corporation. In the years 1921 and 1922 it received quitclaim deeds to the several claims comprising the Anaconda Group from persons who were presumably the locators or in possession. In February, 1928, and before the commencement of this action, the Anaconda Gold Mining Company by quitclaim deed conveyed to appellant whatever interest it had in the Anaconda Group. Respondents located the claims in their own right after 12 o'clock noon on July 1, 1927.

Appellant urges a number of grounds for a reversal of the judgment. It will not be necessary to consider them separately because it is evident that his real contention is that the evidence fails to support the findings and judgment for the reason that, as he maintains, the locations of the claims were made by respondents before the hour of 12 o'clock noon on July 1, 1927, and before the lawful possession of the claims of appellant's predecessor in interest had expired, thereby making respondents' entry unlawful.

The evidence offered by appellant shows that he, acting for the Anaconda Gold Mining Company, did a small amount of assessment work on the claims in May, 1927. On June 29th of that year he purchased a second-hand automobile in Los Angeles, a wheelbarrow, candles, picks, shovels, and some food to take to the claims with which to do the necessary assessment work. He hired M. C. Lande to drive the automobile to the claims and to perform the actual work. The two left Los Angeles on the morning of June 30th, but had motor troubles not uncommonly encountered by the operators of old used cars. They did not reach their destination until between 3 and 4 o'clock in the afternoon of July 1, 1927. The tools and supplies were not unloaded from the automobile, but were returned unused to Los Angeles on the following day.

Undisputed evidence shows that respondents worked for the Anaconda Gold Mining Company prior to the year in question and did assessment work on the claims. The company failed to pay them for this work and owed them the sum of $312 therefor. As they could not collect their money they evidently decided to locate the claims for themselves if the necessary assessment work was not done before noon on July 1, 1927.

On June 29, 1927, Sullivan went to the claims and found a man camped there who was planning to "jump" them on July 1st. Sullivan explained the matter of the unpaid wages to him and he left the claims. According to his testimony, Sullivan returned to the claims at about 3 o'clock on the morning of July 1st, 1927, and found no one in possession and that no assessment work had been done. He waited until after 12 o'clock noon on this day and then built his monuments and posted the location notices. He left the claims at about 3 o'clock in the afternoon with his work of location completed. The location notices were recorded in the office of the county recorder of San Bernardino County on July 5, 1927. Respondents did the required assessment work on the claims for the year.

Respondents kept careful watch of the claims and there is evidence in the record which would justify the trial court in concluding that no assessment work was done on the Anaconda Group for the year ending on July 1, 1927.

Under this state of the record appellant maintains that the locations by respondents were prematurely made. He bases his argument principally upon the following language which appears in each of the location notices: "This claim was located after 12 o'clock A. M. July 1st, 1927; and I was on the property until 1 o'clock P. M. July 1st, 1927, and there was no one on the claim up till this time, and there has been no assessment work done on this claim for 1927." He maintains that because these location notices contained the statement that respondents located them after 12 o'clock on the morning of July 1, 1927, the trial court was required to conclude that the claims were located after that hour and before 12 o'clock noon of the same day. We cannot agree with this contention. Twelve o'clock noon is after 12 o'clock in the morning. Any location made after 12 o'clock noon would be after 12 o'clock in the morning of July 1, 1927. Sullivan's testimony that the monuments were built and the location notices posted between 12 o'clock noon and 3 o'clock in the afternoon of July 1, 1927, was uncontradicted and is entirely sufficient to support the trial court's conclusion that the locations were made between those hours.

■ During the time that respondents had been employed by the Anaconda Gold Mining Company to work for it on the Anaconda Group, respondent Boling was given a key to a house located upon one of the claims. He remained in possession of this key, and appellant maintains that this is sufficient to show that respondents were still in possession of the claims for the Anaconda Gold Mining Company and that, therefore, being agents for the company they could not make a valid location of the claims for themselves. The evidence does not support this contention. After respondents left the employ of the company because of its failure to pay their wages, their position immediately became adverse to it. They instituted proceedings against it to collect the wages due them and were not thereafter employed by the company nor were they its agents or representatives. The mere possession of a key to a house upon one of the claims did not constitute them agents or representatives of the company nor possessors of the claims for it.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 5, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 3, 1932.